ARTHUR WOLF, Appellant, *v.* TITLE GUARANTEE AND TRUST COMPANY, Respondent.

First Department, June 11, 1937.

*John Bogart* of counsel [*Abraham P. Wilkes* with him on the brief], for the appellant.

*C. Elmer Spedick* of counsel, for the respondent.

UNTERMYER, J. On December 9, 1930, plaintiff's assignor, Center Villa, Inc. (to whom we shall refer as plaintiff), sold to the defendant bonds and mortgages, in consideration of which the defendant delivered its cashier's check for $26,550.20. In the afternoon of December tenth the plaintiff deposited the check in its account in the Bank of United States. At one-thirty A. M. of December eleventh the Superintendent of Banks took possession of the Bank of United States under section 57 of the Banking Law, and accordingly the bank did not open for business on that day or thereafter. At about nine-thirty o'clock in the morning of December eleventh the plaintiff, learning that the bank had closed, gave notice to the defendant that the Bank of United States had suspended business and that its authority to collect the check for the plaintiff was revoked, and the plaintiff further directed the defendant not to pay the check. At the time these instructions were received by the defendant the check was in the possession of the Bank of United States or the Federal Reserve Bank of New York, to whom it was delivered by the Bank of United States. The defendant refused to comply with the plaintiff's directions to refuse payment of the check, and when, late in the afternoon of December

eleventh, the check was presented to the defendant through the New York Clearing House for the Federal Reserve Bank, it was paid. Upon payment of the check by the defendant the Federal Reserve Bank applied the proceeds to the payment of an indebtedness owing to it by the Bank of United States.

In January, 1931, the plaintiff commenced proceedings against the Superintendent of Banks, as liquidator of the Bank of United States, to recover the proceeds of the check. In those proceedings an order was made, which was affirmed by this court (233 App. Div. 833), directing the Superintendent to deliver to the plaintiff the amount of the check. Pending an appeal to the Court of Appeals and appeal to this court from an order of the Supreme Court denying a motion for reargument, the Superintendent settled the plaintiff's claim by payment of $23,231.43. In the present action the plaintiff seeks to recover from the defendant the difference between the amount of the defendant's check and interest and the sum received from the Superintendent of Banks, with interest, together with $2,500, stipulated to be the reasonable legal expenses incurred in the proceedings against the Superintendent. In dismissing the complaint the trial court sustained the defendant's contention that the plaintiff was not entitled to control the disposition of the check after deposit in the Bank of United States, and that, accordingly, the defendant was under a duty to pay it when presented by the Federal Reserve Bank in due course.

With that conclusion we are unable to agree. Both by agreement of the parties, as expressed in the pass book and on the deposit slips of the Bank of United States, as well as section 350-a of the Negotiable Instruments Law (Art. 19-a containing said section being known as the Bank Collection Code), the Bank of United States did not acquire title to the check, but was only constituted the plaintiff's agent for the purpose of collection. (*Bath National Bank* v. *Sonnenstrahl, Inc.*, 249 N. Y. 391; *Matter of Vavoudis*, 141 Misc. 823; affd., 233 App. Div. 672; *Salem Elevator Works, Inc.*, v. *Commissioner of Banks*, 252 Mass. 366; 148 N. E. 220.) The Federal Reserve Bank did not acquire title from the Bank of United States, but was only its agent, and, therefore, the plaintiff's subagent, to collect the proceeds. This follows not only from " the underlying purposes and policies of the Federal Reserve System " but from the understanding as it is expressed in the rules and regulations of the Federal Reserve Bank, which so provide. (*Carson* v. *Federal Reserve Bank*, 226 App. Div. 225; affd., opinion by CARDOZO, Ch. J., 254 N. Y. 218.) Therefore, until payment of the check by the defendant, title remained in the plaintiff whether the check happened to be in the possession of the Bank of United

States or in the possession of the Federal Reserve Bank (*Bank of Clarke County* v. *Gilman*, 81 Hun, 486; affd., 152 N. Y. 634; *Bank of America* v. *Waydell*, 187 id. 115), and the plaintiff could, by notice to the defendant, revoke the authority of its agent or subagent to collect the check. The defendant could disregard these instructions of the principal only at its peril. If it entertained misgivings concerning the nature of the transaction, it should have withheld action pending investigation of the facts or tendered payment into court for ultimate determination of the conflicting claims. Its action in dealing with the check after notice of revocation of the agent's authority constituted a conversion of the plaintiff's property.

The defendant seeks to distinguish the transaction upon the theory that the check in question was a cashier's check and, therefore, the direct liability of the defendant. (*Carnegie Trust Co.* v. *First National Bank*, 213 N. Y. 301; *Matter of Bank of United States*, 243 App. Div. 287.) We think the distinction is without significance here. Whatever the nature of the instrument, it remained the property of the plaintiff, who, until payment, could revoke the authority of any agent to whom it had been intrusted for collection.

We are further of opinion that the release of the Superintendent of Banks, as liquidator of the Bank of United States, in consideration of which the plaintiff received $23,231.43, does not constitute a defense to the action, but only entitles the defendant to be credited with that amount, since in no event could the defendant have recovered from the Federal Reserve Bank or the Superintendent for the voluntary payment of the check, made in violation of the plaintiff's rights, with full knowledge of all the facts. Consequently, no right of the defendant was impaired by the settlement of the claim against the Superintendent and his release. The only effect of the plaintiff's action in prosecuting that claim was to benefit the defendant to the extent of the amount recovered by settlement in the liquidation proceeding. Nor was the defendant a joint tort feasor with the Federal Reserve Bank and the Bank of United States, as it is contended, even if that circumstance were deemed to affect the defendant's liability. (See Debtor and Creditor Law, art. VIII.) We, therefore, conclude that the plaintiff is entitled to recover for the amount of the check, with interest, less the sum received from the Superintendent of Banks, with interest, in addition to the stipulated expense reasonably incurred in that proceeding. (*Jones* v. *Morgan*, 90 N. Y. 4.)

The judgment should be reversed, with costs, and judgment directed in favor of the plaintiff for the amount demanded in the complaint, with costs.

MARTIN, P. J., O'MALLEY, TOWNLEY and GLENNON, JJ., concur.

Judgment unanimously reversed, with costs, and judgment directed in favor of the plaintiff for the amount demanded in the complaint, with costs.