Patrick J. Picariello, J.
This consolidated action was tried by the court without a jury.
The cause is one to recover against the corporate defendant, as maker of the subject check, and the heirs of the deceased payee of said check under the provisions of article 7 of the Decedent Estate Law.
The decisive facts are not in dispute.
The subject check is dated October 23, 1959, ivas made by the corporate defendant, signed and issued by the decedent as maker’s president, made payable to him, and indorsed over by said decedent to the plaintiff as a deposit payment on a sale at auction by the plaintiff of two lots purchased by a third party.
It is plaintiff’s contention that the circumstances under which it became possessed of the check renders it a holder in due course against whom the interposed defenses, even if provable and substantiated, will not prevail.
In their memoranda to the court, both parties allude and refer to statements contained in the affidavits submitted by them on plaintiff’s application for summary judgment. Although these affidavits are considered as the pleadings in this ease mider the provisions of CPLR 3213, averments therein contained do not constitute proof, ipso facto, of the facts recited. In fact, these affidavits are not even admissible in evidence since they constitute and contain nothing more nor less than self-serving declarations and, in the absence of proof, have no bearing on the ultimate determination of the issue.
The maker takes the position that the appearance of the check itself and the circumstances surrounding its negotiation to the plaintiff gave notice of a sufficient fact and invoked inquiry to *442 ascertain payee’s title thereto and bis right to negotiate the same; and the failure to conduct such inquiry renders plaintiff not a holder in due course and therefore subjects it to all provable and substantiated defenses of the maker against the payee.
It is elementary that if plaintiff is a holder in due course it holds the instrument free of any defenses available to prior parties among themselves (Scherr v. Taylor Int. Corp., 36 Misc 2d 722). It is also fundamental that the burden is on the plaintiff to prove that it is a holder in due course (Kastor v. Schwartzer, 41 N. Y. S. 2d 119).
It may be true that the existence of merely suspicious circumstances does not, toithout more, amount to notice of an infirmity in a negotiable instrument or defect in title of person negotiating it (Hall v. Bank of Blasdell, 306 N. Y. 336) and that the same does not constitute bad faith and destroy the status of a holder in due course (Overseas Credit Corp. v. Cal-Tech Systems, 20 A D 2d 355 [1964]; see, also, Gramatan Nat. Bank & Trust Co. v. Mikolajczak, 142 N. Y. S. 2d 564).
However, “good faith” necessary to make one a holder in due course of a note cannot be proved simply by showing that value was paid for property, even though such a presumption follows (Stratford Credit Corp. v. Pettrone, 11 Misc 2d 65). In determining the existence or nonexistence of “ good faith ” one must look at all the circumstances in the case (State of the Netherlands v. Federal Reserve Bank of N. Y., 99 F. Supp. 655 [U. S. Dist. Ct., S. D. N. Y.], affd. in part and revd. in part on other grounds 201 F. 2d 455).
The principal fact or event, viz., the “good faith ” of the holder of the note, being the object of investigation, the circumstances (State of the Netherlands, etc., supra) consist of all the related or accessory facts or occurrences which attend upon it, which closely precede or follow it, which surround and accompany it, which depend upon it, or which support or qualify it.
What are these facts and circumstances in this case?
Plaintiff is conducting a sale by auction of real estate. Nothing in the record discloses who did the bidding for the property, but the same resulted in the negotiation of the subject check to the plaintiff as “ earnest money.” The check constituted an obligation of the defendant corporate maker, was signed by the deceased as its president, was made payable to the deceased and was indorsed over by the deceased to the plaintiff as “ earnest money,” deposited on this purchase of real estate by a third party.
*443 While the plaintiff was not bound to be on the watch for facts which would put a very cautious man on his guard, it was bound to act in good faith. (Second Nat. Bank v. Weston, 161 N. Y. 520, 526; Cheever v. Pittsburgh, Shenango & Lake Erie, R. R. Co., 150 N. Y. 59, 66.) And even if plainiff’s actual good faith is not questioned, if the facts known to it should have led it to inquire, and by inquiry it could have discovered the real situation, in a commercial sense it acted in bad faith and the law will withhold from it the protection that it would otherwise have extended.
The court can conceive of no standard of commercial rectitude that should have more intensely excited the plaintiff to suspect the authority of the payee to negotiate the check for the purposes intended thereby than the circumstances under which this check was negotiated. The check itself gave notice of a suspicious fact and invoked inquiry in relation thereto. One who suspects, or ought to suspect, is bound to inquire, and the law presumes that he knows whatever proper inquiry would disclose. While the courts are careful to guard the interests of commerce by protecting the negotiation of commercial paper, they are also careful to guard against fraud by defeating titles taken in bad faith, when regarded from a commercial standpoint. In the case of Cheever v. Pittsburgh etc., R. R. Co. (supra, p. 67) wherein an officer of a corporation made the corporate obligation payable to himself and then attempted to deal with it for his own benefit, the court held: “ When paper of that character is presented by the officer or agent of the corporation, it bears upon its face sufficient notice of the incapacity of the officer or agent to issue it.”
The subject check, when read and considered in the light of the facts surrounding its negotiation, was notice to the plaintiff that it was apparently accepting money from one to whom it did not belong, and this cast upon plaintiff the duty of inquiring into the matter so as to ascertain whether the facts were in accord with the apparances; for if they were, it knew that it could not honestly accept the check. (See, also, Rochester & Charlotte Turnpike Rd. Co. v. Paviour, 164 N. Y. 281.)
The plaintiff, having accepted from an officer of the corporate maker the subject check as “ earnest money,” on the purchase of real estate by a third party, at its own peril, the court finds prima facie the act to be unlawful, and, unless the check was actually authorized, the plaintiff is deemed to have accepted it with notice of the rights of the corporate maker.
Under the circumstances, the court concludes that plaintiff is not a holder in due course within the meaning and intent of the *444 statute as the same has been construed by the courts, and that it accepted the check subject to the defenses of the immediate parties.
The court is not impressed with the proof offered to sustain the defense of ultra vires under all the surrounding facts and circumstances in this case. One cannot lose sight of the fact that the defendant corporation was “family-owned,” and it would be ludicrous under the circumstances to expect its secretary or any other officer to call a meeting of its board of directors to empower, ratify or confirm any act or deed of the decedent. It is true that the law permits individuals to incorporate their business as a cover for the very purpose of escaping personal liability; but this privilege is granted for the legitimate convenience of the stockholders and may not be used as a mask or a double-edged sword for their personal acts and responsibilities by damning a transaction as ultra vires if fiscally inconvenient and by blessing the same as within the scope of authority if profitable. Moreover, and in the court’s opinion, this defendant is estopped from pleading ultra vires in view of the method employed by this defendant in consummating prior like transactions with the plaintiff. (See item “2” in notice to admit and the Exhibit A attached thereto.)
There can be no question and the court is convinced on the record, however, that there was no consideration running from the payee to the maker of the check. This defense is therefore sustained and plaintiff’s complaint is dismissed as against the corporate defendant.
.Section 170 of the Decedent Estate Law authorizes actions against legatees and others to enforce a liability for decedent’s debt. The action authorized by this section is, in form, one against the estate of the deceased debtor, but in substance is against decedent’s property which has come into possession of heirs, legatees or next of kin (Ehnes v. Nolan, 204 Misc. 102, mot for lv. to app. den. 284 App. Div. 844). The purpose of the statute was to remove the strict and unjust limitations of the common law (Ehnes v. Nolan, supra).
The only argument presented by the individual defendants is that the phrase in the stated section, to wit, “ for a debt of the decedent, ’ ’ is not intended to apply to an obligation such as the one sought to be enforced herein.
Thoug’h ‘ ‘ debt ’ ’ was sometimes employed at common law in a strictly technical sense to denote and ascertain amounts definitely fixed by contract, in a broader sense, as in this section, a ‘' debt ’ ’ is simply what one person owes or is or may be *445 bound to pay to another, whether contingent or not. (Wicks v. Carmichael, 172 Misc. 924.)
Thus we find the courts permitting such an action against legatees and/or representatives of the estate of a decedent, to recover for medical services (Matter of Dragonas, 35 Misc 2d 300); public hospital care (Trussell v. Kostiw, 35 Misc 2d 60; Matter of Gottheimer, 9 Misc 2d 489); public assistance or care (MacLean v. Edenbaum, 6 Misc 2d 933); legal expenses (Matter of Anninger, 35 Misc 2d 493); assumption of mortgage indebtedness (Wicks v. Carmichael, supra); alimony payments (Gough v. Frost, 190 Misc. 927); deficiency judgments (Emigrant Ind. Sav. Bank v. New Rochelle Trust Co., 273 App. Div. 62, affd. 297 N. Y. 996; Matter of McGinnis, 268 App. Div. 966; National Sav. Bank of City of Albany v. National Commercial Bank & Trust Co. of Albany, 176 Misc. 1057; First Nat. Bank v. Goodman, 173 Misc. 562; Matter of Quintana, 158 Misc. 701); and promissory notes (Matter of Morrell, 38 Misc 2d 518).
The court finds that deceased’s liability to the plaintiff by virtue of his indorsement of the subject check is one for which he could undoubtedly have been held to account had he survived the litigation. Under the circumstances, the debt is of such a nature that an action against decedent’s distributees to enforce payment thereof to the extent only in which they participated in the distribution of the assets of decedent’s estate is proper and permissible under the statute.
Defendants then argue that section 181 of the Decedent Estate Law precludes the institution of this action since there is on hand and the administrator has in his possession a sum of money more than .sufficient to pay plaintiff’s claim.
This section regulates the procedure but does not create the right, which exists independently thereof. Such an action is in form against the next of kin or legatee, but in substance it is against the property (Brooklyn Sav. Bank v. Wechsler Estate, 259 N. Y. 9).
Moreover, not only is the defendant Anthony Camera sued in his individual capacity as a distributee and in his representative capacity as administrator of the estate, but also in plaintiff’s Exhibit 2 marked in evidence (notice to admit) defendants failed to deny “ that the entire estate of Nicola Camera, deceased, has been distributed in equal shares to Anthony Camera, Theresa Camera, and Josephine C. Murdocco.”
Plaintiff’s complaint is sustained as to the defendants Anthony Camera, individually and as administrator of the goods, chattels and credits of Nicola Camera, deceased, Theresa Camera and *446 Josephine C. Murdocco, and judgment is granted to plaintiff against the said defendants for the amount sued for in the complaint, with appropriate interest and costs.
The judgment shall further provide for execution thereon to be issued first against the estate of the deceased, and should the funds on hand in possession of defendant Anthony Camera, as administrator, be insufficient to satisfy the same, then execution shall issue against all the individual defendants, jointly and severally, for an amount not larger than that which they respectively received as distributees of the decedent’s estate.
Settle judgment in accordance with the above on three days’ notice.